```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION
```

WENDALL HALL,

        Plaintiff,

v.                            Case No. 2:20-cv-380-JES-MRM

ELIZABETH PORFERT,
PATRICK MCCAWLEY, and
JON CARNER,

        Defendants.
_____

## OPINION AND ORDER

This cause is before the Court on consideration of a motion for summary judgment filed by Defendants Jon Carner, Patrick McCawley, and Elizabeth Porfert (Doc. 73) and Plaintiff Wendall Hall's response in opposition to the motion. (Doc. 75). After careful consideration of the pleadings and exhibits offered by all parties, the Court grants the defendants' motion for summary judgment.

### I. Background and Pleadings

Wendall Hall (Hall), a resident of the Florida Civil Commitment Center ("FCCC"), initiated this action by filing a pro se civil rights complaint under 42 U.S.C. § 1983. (Doc. 1).[1] In his Amended Complaint, Hall raised claims against the Secretary of

---

[1] Hall's amended complaint (Doc. 9) is the operative pleading before the Court.

the Department of Children and Family Services and FCCC Director Donald Sawyer because of an allegedly unconstitutional FCCC policy (PRG-11) that provides for sanctioning residents who violate institutional rules. (Doc. 9 at 3). Hall also raised First Amendment retaliation claims against FCCC Security Chief Jon Carner and FCCC Clinicians Patrick McCawley and Elizabeth Porfert. (Id.) Finally, Hall argued that Defendants Carner, McCawley, and Porfert violated procedural due process on two separate occasions by filing false disciplinary reports against him and by failing to provide advance written notice or an opportunity for him to present witnesses at his hearing on the charges. (Id.)

The Amended Complaint's factual allegations relevant to the instant motion for summary judgment are as follows: Hall alleges that on May 1, 2020, Defendant Porfert wrote a false disciplinary report accusing him of masturbating in front of a staff member ("Incident One"). (Doc. 9 ¶ 22). He alleges that Defendant Porfert could not have seen his hands or penis because they were hidden behind a bathroom stall door. (Id.) He asserts that the disciplinary report was written in retaliation for filing grievances and lawsuits against Defendant Porfert and her friends. (Id.)

Next, on May 4, 2020, Hall was on suicide observation status in an isolation cell. (Doc. ¶ 24). He alleges that Defendant McCawley wrote a false disciplinary report against him for

"disrespect or violation of institutional rules or verbal assault" (Incident Two). (Id.) Hall asserts that the disciplinary report on Incident Two was written in retaliation for his lawsuits against "Ms. Salema and Donald Sawyer." (Id.)

On May 14, 2020, Defendant Carner found Hall guilty of both disciplinary reports and placed him on secure management. (Doc. 9 ¶ 25). Hall asserts that Defendant Carner found him guilty solely in retaliation for Hall's grievances and lawsuits. (Id.) Hall asserts that he did not receive a copy of either disciplinary report and was denied an opportunity to obtain witnesses or witness statements in his defense. (Id. ¶ 26).

Hall seeks five million dollars in damages, a permanent injunction disallowing the FCCC from "issuing and writing disciplinary reports against" any FCCC resident, and a permanent injunction, forcing the FCCC to use other disciplinary procedures. (Doc. 9 at 11). He also asks that the Court expunge all of his disciplinary reports and "release him from secure management and wing restriction and confinements." (Id.)

The defendants filed a motion to dismiss Hall's amended complaint. (Doc. 35). Thereafter, the Court dismissed all claims against Defendant Secretary and Defendant Sawyer for failing to state a claim on which relief could be granted. (Doc. 46 at 11-12). The Court also dismissed Hall's First Amendment retaliation claims against Defendants Carner, McCawley, and Porfert as

premature because neither disciplinary report had been overturned. (Id. at 16-17). However, the defendants' motion to dismiss did not address Hall's due process claims against Defendants Carner, McCawley, and Porfert for the allegedly false disciplinary reports on Incidents One and Two, and the Court allowed those claims to proceed. (Id. at 14-15).

The parties were directed to conduct discovery (Doc. 51), and thereafter, Defendants Carner, McCawley, and Porfert filed a motion for summary judgment. (Doc. 73). Hall has filed a response (Doc. 75), and the motion is ripe for review.

## II. Motion for Summary Judgment

In their motion for summary judgment, the defendants first argue that "the ramifications of being found guilty of the two charges" in Incidents One and Two were insufficient to implicate an atypical significant deprivation such that Hall's liberty interests were violated (and thus, no procedural due process was required). (Doc. 73 at 17, 18-19). Nevertheless, the defendants also argue that Hall received adequate due process for both incidents at his disciplinary hearing.[2] (Id. at 18). In support of their motion, the defendants attach affidavits from Defendant Carner and Dakota Linder (Docs. 73-1, 73-2), a copy of the incident reports for Incidents One and Two (Docs. 73-3, 73-4, 73-8), Hall's

---

[2] The hearing on both disciplinary charges was held at the same time. (Doc. 73 at 18).

4

Notice of Violation and Behavior Management for Incidents One and Two (Docs. 73-5, 73-9, 73-10), the camera review report on Incident One (Doc. 73-6), the disposition reports for Incidents One and Two (Doc. 73-7, 73-11), and the addendums showing that Hall refused to sign his incident reports. (Docs. 73-8, 73-12).

In response to the defendants' motion for summary judgment, Hall generally denies—without explanation—each of the defendants' statements of fact. (Doc. 75 at 2-4).[3] Hall attaches to his response many of the same documents as the defendants, including the behavior management reports on Incidents One and Two (Docs. 75-7, 75-8), the incident reports (Docs. 75-9, 75-10, 75-11), and the disposition reports for Incidents One and Two (Docs. 75-13, 75-14). He also attaches the grievances he filed over the incidents (Docs. 75-4, 75-5, 75-6), his own affidavit (Doc. 75-

---

[3] Many of the statements that Hall denies are either actually admitted elsewhere in his pleadings, are clearly undisputable, or are used to support his own arguments. For example, Hall denies that Defendant Porfert wrote in her incident report that she observed Hall masturbating in the urinal (Doc. 75 at 2), but states in his affidavit that Defendant Porfort accused him of masturbating in the urinal and wrote an incident report against him. (Doc. 75-2 ¶¶ 5, 6). He denies that he was placed in an observation room for close observation after threatening self-harm (Doc. 75 at 3) yet attests that he was placed in a confinement cell "under suicide observation, for making a suicide threat, stating I wanted to kill myself[.]" (Doc. 75-2 ¶ 7). He denies that as a result of Incident One he was placed on 30-day wing restriction and that his CARE Level was restarted (Doc. 75 at 4), yet he states in his affidavit that he received "30 days wing restriction for each D.R." and that his CARE Level was reduced to Level 3 from Level 4. (Doc. 75-2 ¶ 5).

5

2), and a copy of the FCCC PRG-11 Behavior Management and Intervention document. (Doc. 75-12).

Hall does not explain each exhibit's significance. Nor does he provide pinpoint citations to relevant portions of any document that refute the defendants' arguments or show that there is a genuine issue of disputed facts. Litigants on summary judgment cannot shift their burden to the Court by simply referring to the existence of "evidence" in voluminous exhibits, large portions of which are not addressed in their brief, with the expectation that the Court will unearth any beneficial evidence that the filer may have neglected to mention. See, e.g., United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); Carolina Acquisition, LLC v. Double Billed, LLC, 627 F. Supp. 2d 1337 (S.D. Fla. 2009) ("Federal judges are not archaeologists. . . . We possess neither the luxury nor the inclination to sift through that mound of obfuscation in hopes of finding a genuine issue of material fact to deny summary judgment.") (citation omitted); Lawrence v. Wal-Mart Stores, Inc., 236 F.Supp.2d 1314, 1322 (M.D. Fla. 2002) ("It is the obligation of the non-moving party . . . not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment[.]").

Nevertheless, Hall provides a separate "Supplemental Statement of Genuine Issues of Material Facts in Dispute" wherein

6

he urges that he did not receive adequate written notice of the charges against him and did not have an opportunity to call witnesses or to present evidence at the disciplinary hearings in his own defense. (Doc. 75 at 6). He also asserts that he was incompetent, and thus not responsible for statements made while in the suicide observation cell and that there was insufficient evidence to support the FCCC disciplinary board's findings. (Id. at 7).

### III. Legal Standard

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court explains the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation marks omitted). The movant may meet this burden by presenting evidence that would be admissible at trial indicating

there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. Id. at 322–24.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### IV. Discussion

Liberally construing Hall's Amended Complaint and his response to the defendants' motion for summary judgment, Hall challenges the sanctions imposed as a result of the disciplinary reports because both reports were allegedly false and because he received constitutionally inadequate due process during the disciplinary hearing.

**A. Hall's claims that the defendants fabricated the claims against him are premature.**

Notably, Hall does not merely claim that he was provided inadequate due process during his disciplinary proceedings. He

8

claims that he was sanctioned undeservedly as a substantive matter because he never engaged in the behavior of which he was accused. Hall specifically asserts that the defendants fabricated both disciplinary reports based on spite and on a desire to retaliate against him. He claims that Defendant Porfert "falsely accused" him of masturbating while looking at her because he had filed lawsuits against her and her friends. (Doc. 9 ¶ 22). He asserts that Defendant McCawley wrote the second disciplinary report solely to retaliate against him for filing lawsuits against Emily Salema and Donald Sawyer. (Id. ¶ 24). He claims that Defendant Carner found him guilty of the infractions only because he (Hall) filed lawsuits against Defendant Carner's friends. (Id. ¶ 25). Because Hall asserts that he is actually innocent of the charges, these allegations, if proven, would necessarily imply the invalidity of the sanctions imposed. However, Hall has not alleged that the disciplinary reports have been overturned. Rather, that is part of the very relief he seeks in his Amended Complaint. (Id. ¶ 32).

In Heck v. Humphrey, 512 U.S. 477, 489 (1994), the United States Supreme Court stated that a § 1983 cause of action "attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." A "conviction" for purposes of Heck, includes a ruling in a prison disciplinary proceeding "based on allegations of deceit." Edwards

9

v. Balisok, 520 U.S. 641, 648 (1997).[4] The Balisok Court specifically held that claims "for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." Id. at 648.

To the extent Hall seeks relief for the defendants' alleged fabrications, his section 1983 claims with respect to the sanctions imposed for Incidents One and Two have not yet accrued because he has not alleged that the disciplinary charges terminated in his favor. Therefore, the claims are due to be dismissed as premature, and the defendants are entitled to summary judgment on any claim based upon their conduct leading to his convictions. See Kleparek

---

[4] The Court recognized that Hall is not a prisoner. And the Supreme Court has concluded that, as a general rule, civil detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 322 (1982). Indeed, the involuntarily civilly committed have liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint. Id. The Eleventh Circuit has similarly held that "Youngberg establishes that the due process rights of the involuntarily civilly committed are at least as extensive as the Eighth Amendment rights of the criminally institutionalized, and therefore, relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." Lavender v. Kearney, 206 F. App'x 860, 863 (11th Cir. 2006) (quoting Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996) (quotation marks omitted)). Therefore, the case law that has developed in the prison context also sets forth the contours of the due process rights of the civilly committed. Id.

10

v. Florida Civil Commitment Center, No. 2:13-cv-490-FtM-38CM, 2014 WL 7218881 (M.D. Fla. Dec. 17, 2014) (dismissing FCCC plaintiff's claims challenging an allegedly false disciplinary report and the procedures used during the disciplinary hearing because the disciplinary infraction had not been expunged); Douse v. Budz, No. 2:09-cv-596-FtM-29DNF, 2009 WL 3256328 at *4 (M.D. Fla. Oct. 7, 2009) (recognizing that "a claim challenging unlawful conduct leading to an unconstitutional conviction, including administrative action while in confinement, cannot proceed unless the plaintiff shows that the challenged conviction was reversed, expunged or otherwise invalidated," as required by Heck).

**B.     The sanctions imposed on Hall do not implicate constitutional due process concerns.**

Even if Hall challenges only the process afforded him on the disciplinary reports (and not the reports on a substantive basis), the defendants are still entitled to summary judgment because Hall has not met the threshold requirement of showing that he was deprived of a protected interest arising from the Due Process Clause.

In its order on the defendants' motion to dismiss, the Court explained the procedural due process required at prison disciplinary hearings:

> The filing of a false disciplinary charge, standing alone, does not state a constitutional claim. The Constitution requires only that the plaintiff be afforded due process at the institutional hearing (on

11

> the allegedly false charge), which represents the plaintiff's opportunity to expose falsities or inaccuracies. See Freeman v. Rideout, 808 F.2d 949, 952 (2d Cir. 1986) (recognizing that the protections from actions such as false disciplinary reports are found in "the procedural due process requirements as set forth in Wolff v. McDonnell").
>
> In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court described the minimum due process requirements for prisoners who receive discipline that results in the loss of good-time credits or the imposition of solitary confinement. These protections include advance written notice of the charges, adequate time to prepare a defense, an opportunity to present witnesses and evidence, and a written statement by the factfinder explaining the reasons for the decision. Id. In addition, the decision-maker must be sufficiently impartial so as not to present "a hazard of arbitrary decisionmaking." Id. at 571. Moreover, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board [to impose a penalty.]" Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

(Doc. 46 at 13-14) (footnote omitted). The Court further explained that a defendant's failure to comply with the procedural protections does not automatically give rise to a due process claim. (Id. at 14) Rather, a defendant's failure to follow each Wolff procedural requirement violates the Constitution only when the failure resulted in the deprivation of the plaintiff's interest in life, liberty, or property. Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or

12

property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.")

Hall argues that there is a genuine issue of material fact as to whether: (1) he was provided advance notice of the disciplinary charges against him; (2) he was provided an opportunity to call witnesses; and (3) there was some evidence to support the board's findings. (Doc. 75 at 6-7). The defendants argue that they complied with all the Wolff requirements but note that "[a] defendant's failure to follow each Wolff procedural requirement violates a plaintiff's constitutional rights only when the failure resulted in the deprivation of plaintiff's interest in life, liberty or property." (Id. at 17). The defendants further argue that, while Hall was afforded due process, "the ramifications of being found guilty of the two charges would not even require that FCCC afford due process under the law." (Id. at 19). It is unnecessary to now consider whether either party has shown a genuine dispute (or lack of dispute) as to whether the defendants followed each Wolff requirement because the Court finds that the sanctions alleged by Hall do not implicate due process concerns.

It is undisputed that the sanctions imposed for the two disciplinary reports were a total of sixty days in administrative confinement (30 days for each infraction, to run consecutively) and a reduction in of Hall's CARE level "from a CARE Level 4 to a CARE Level 3." (Docs. 75-2 at 5, 73-11, 75-14, 75-13). Hall now

13

asserts that the reduction in CARE Level means that he is not currently cleared for employment or allowed to possess his personal television, presumably until he is placed back on CARE Level 4 in as little as six months. (Doc. 75-2 at 5).[5,6]

In Sandin, the Supreme Court held that temporary periods of segregation, such as Hall's two 30-day periods of administrative confinement, do not typically implicate a liberty interest because they do not present an "atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. See also Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (concluding that two months in administrative confinement did not constitute a deprivation of a constitutionally protected liberty interest); Al-Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006) (finding that there is no right inherent in

---

[5] The Court takes notice of the Florida Civil Commitment Center Resident Handbook, which describes the privilege levels (CARE Levels) at the FCCC. A resident assigned to CARE Level 3 advances to CARE Level 4 after six months upon approval from their treatment team if he has no major violations or fewer than three minor violations during that time. See https://docplayer.net/15372250-Florida-civil-commitment-center-resident-handbook-13619-s-e-highway-70-arcadia-florida-34266-8700-phone-863-491-4800-fax-863-491.html

[6] Hall also speculates that the discipline reports could be used in the future to deny his release from the FCCC. (Doc. 9 at ¶ 27). However, this is not the type of liberty interested protected by, and requiring, a Wolff-style hearing. See Sandin v. Conner, 515 U.S. 472, 487 (1995) ("[T]he chance that a finding of misconduct [in prison] will alter the balance [in a parole hearing] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause").

14

the Constitution to be free from confinement in administrative segregation). Likewise, Hall's temporary loss of his right to seek paid employment at the FCCC[7] and the right to possess his own portable television—privileges presumably allowed at CARE Level 4, but not Level 3—do not evince a denial of adequate food, exercise, medical care, sanitation, or any other circumstance that, in the Court's view, would constitute an atypical and significant hardship in relation to the ordinary incidents of resident life at the FCCC. See Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); Walker v. Loman, No. 06-0896-WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). Simply put, the sanctions imposed on Hall for the violations did not implicate due process concerns, and summary judgment is due to be granted in favor of the defendants on Hall's procedural due process claims.

---

[7] Notably, Hall does not claim that he was actually employed at the FCCC when his CARE Level was reduced.

## V. Conclusion

Accordingly, it is now **ORDERED**:

1. The motion for summary judgment (Doc. 75) filed by Defendants Jon Carner, Patrick McCawley, and Elizabeth Porfert is **GRANTED**. Judgment shall enter dismissing as premature all claims based upon the defendants' alleged fabrication of disciplinary reports and denying on the merits all claims based upon inadequate procedural due process.

2. With no remaining defendants or claims, the **Clerk** is directed to terminate any pending motions, close this case, and enter judgment accordingly.

**DONE AND ORDERED** in Fort Myers, Florida on June 17th, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-2

Copies furnished to:
Counsel of Record
Wendall Hall